UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| River Services Company, L.L.C., Budwine & | : | CIV NO. 2:17-CV-2691 |
| Associates, L.L.C., Neptune Diving, L.L.C., | : | |
| and Nature's Escape, L.L.C. | : | JUDGE _____ |
|     Plaintiffs, | : | |
| | : | MAGISTRATE _____ |
| VERSUS | : | |
| | : | SECTION _____ |
| Stephen Peer, individually, and Peer Partners | : | |
| Interactive, L.L.C. | : | |
|     Defendants. | | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

River Services Company, L.L.C., Budwine & Associates, L.L.C., Neptune Diving, L.L.C., and Nature's Escape, L.L.C. (collectively, "Plaintiffs") file this Complaint against Stephen Peer and Peer Partners Interactive, L.L.C. (collectively, "Defendants") and assert the following allegations and causes of action:

## SUMMARY OF DISPUTE

Plaintiffs entered into an agreement (the "Agreement") with Defendants to provide website design, website support, internet hosting services, DNS management (referred to as "email hosting services"), and social media services. Through the Agreement, Plaintiffs directed Defendants to register four domain names on behalf of Plaintiffs. Each domain incorporates trademarks that the Plaintiffs, respectively, have used for years and represent the Plaintiffs' valuable good will. Plaintiffs further directed Defendants to develop websites and establish email services for each domain, which Plaintiffs use to market their businesses, communicate internally, and communicate with current and prospective customers. Plaintiffs pre-paid for Defendants' services under the Agreement through March 31, 2017, and Plaintiffs are not obligated to continue their business relationship with Defendants beyond this date. Unsatisfied with Defendants' services and pricing, Plaintiffs decided to discontinue their relationship with

Defendants under the Agreement. However, Defendants now hold Plaintiffs' businesses hostage by refusing, after repeated requests by Plaintiffs, to provide access codes and passwords required to transfer Plaintiffs' website, social media, and email services to their new service providers. Defendants have taken *de facto* control and ownership of Plaintiffs' domains, websites, and email accounts. Without these access codes and passwords, Plaintiffs' websites, social media, and email accounts will be shut down at <u>midnight on March 31, 2017</u>. A shutdown of Budwine & Associates, L.L.C.'s and River Services Company, L.L.C.'s systems, in particular, will have a disastrous effect on their businesses and on commercial operations on the Mississippi River and the inland water-way system. These two companies are emergency response providers for pollution and serious marine incidents, working in that capacity with the U.S. Army Corps of Engineers ("<u>USACE</u>") and the U.S. Coast Guard ("<u>USCG</u>") in marine surveying diving and salvage operations. These two companies and their customers rely on seamless communication to support such operations and mitigate the impact of marine incidents on navigation and commerce on the Mississippi River.

## <u>THE PARTIES</u>

1.      River Services Company, L.L.C. is a Louisiana limited liability company with its principle place of business located in Harahan, Louisiana. River Service's primary business is in Louisiana, Mississippi, Tennessee, Kentucky, Illinois, Missouri, Arkansas, Texas, Alabama, Oklahoma, Ohio, and West Virginia, and it provides commercial diving, salvage, and emergency response services to customers, which include the USACE and the USCG.

2.      Budwine & Associates, L.LC. is a Louisiana limited liability company with its principle place of business located in Harahan, Louisiana. Budwine's primary business is in Louisiana, Mississippi, Tennessee, Kentucky, Illinois, Missouri, Arkansas, Texas, Alabama, Oklahoma, Ohio, and West Virginia, and it provides marine surveying and consulting services to

customers, which include the USACE and the USCG.

3.     Neptune Diving, L.L.C. is a Louisiana limited liability company with its principle place of business located in Harahan, Louisiana. Neptune Diving's primary business is in Louisiana, Alabama, Mississippi, and Texas, and it provides commercial diving services to the oil and natural gas industry.

4.     Nature's Escape, L.L.C. is a Louisiana limited liability company with its principle place of business located in Harahan, Louisiana. Nature's Escape's primary business is in Louisiana, and it provides day spa services, specifically massage therapy and esthetician services.

5.     Stephen Peer is a citizen of Louisiana with a primary residence in Orleans Parish, Louisiana.

6.     Peer Partners Interactive, L.L.C. is a Louisiana limited liability company with its principle place of business located in New Orleans, Louisiana. Peer Partners' primary business is in Louisiana, and it provides services relating to domain name registrations, internet development, hosting, and online marketing services to its customers.

## JURISDICTION AND VENUE

7.     This is a civil action arising under a federal statute, namely the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and therefore this Court has subject matter jurisdiction over this matter under 15 U.S.C. § 1221 and 28 U.S.C. §1331. Under 28 U.S.C. §1367, this Court also has supplemental jurisdiction over Plaintiffs' other claims because they form part of the same case or controversy. The business relationships between the parties was initiated and developed over time in the Eastern District, and Peter Peer and Peer Partners Interactive, L.L.C. operate within the Eastern District.

8.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. §1391(b)(1)

because Defendants are citizens of Louisiana and are domiciled and/or conduct business in the Eastern District.  Venue is further proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred in the Eastern District.

9.      Therefore, jurisdiction and venue are proper in this Court.

## ALLEGATIONS COMMON TO ALL COUNTS

10.      Plaintiff River Services Company, L.L.C. was organized in 1999 and has operated for 18 years under the mark River Services. Through long and exclusive use over many years, this mark has become uniquely associated with Plaintiff River Services Company, L.L.C. for providing commercial diving, salvage, and emergency response services to customers. Therefore, Plaintiff River Services, L.L.C., owns exclusive rights to the trademark River Services Company.

11.      Plaintiff Budwine & Associates, L.LC. was organized in 1979 and has operated for 38 years under the mark Budwine & Associates. Through long and exclusive use over many years, this mark has become uniquely associated with Plaintiff Budwine & Associates, L.LC. providing marine surveying and consulting services. Therefore, Plaintiff Budwine & Associates, L.LC. owns exclusive rights in the trademark Budwine & Associates.

12.      Plaintiff Neptune Diving, L.L.C. was organized in 2014 and has operated for 3 years under the mark Neptune Diving. Through long and exclusive use over many years, this mark has become uniquely associated with Plaintiff Neptune Diving, L.L.C. for providing commercial diving to the oil and natural gas industry. Therefore, Plaintiff Neptune Diving, L.L.C. owns exclusive rights in the trademark Neptune Diving.

13.      Plaintiff Nature's Escape, L.L.C. was organized in 2011 and has operated for 5 years under the mark Nature's Escape Spa. Through long and exclusive use over many years, this mark has become uniquely associated with Plaintiff Nature's Escape, L.L.C. for providing day spa services, specifically massage therapy and esthetician services. Therefore, Plaintiff

Nature's Escape, L.L.C. owns exclusive rights in the trademark Nature Escape Spa.

14.     Through years of work and investment, Plaintiffs have built and sustained brands associated with their distinctive marks, which are known by customers in their respective markets. Plaintiffs' marks were distinctive before Defendants registered Plaintiffs' corresponding domain names.

15.     In January 2013,  Plaintiff Nature's Escape, L.L.C. entered into an unwritten agreement ("the Agreement") with Defendants subject to termination by either party at any time. Thereafter, on or about April 1, 2014, Plaintiff River Services Company, L.L.C. and Plaintiff Budwine & Associates, L.L.C. joined in the Agreement. Plaintiff Neptune Diving, L.L.C. subsequently joined in the Agreement at a later date.

16.     Under the Agreement, Defendants acted as Plaintiffs' agent to register four domain names at the specific direction of Plaintiffs, that Plaintiffs would own. These domain names    include:    (1)    riverservicescompany.com;    (2)    budwineassociates.com;    (3) neptunedivingllc.com; and (4) naturesescapespa.com. (Attached as Exhibits 1 through 4 are records from the Internet Corporation for Names and Numbers ("ICANN") showing that the Plaintiffs are the "Registrant Organization," *i.e.*, owners of the domain names, but listing Defendants as the "Admin Contact" and "Tech Contact.")

17.     Under the Agreement, Plaintiffs were to have ownership *and control* of Plaintiffs' Domain Names that Defendants registered on Plaintiffs' behalves. Unbeknownst to Plaintiffs, however, when registering Plaintiffs' Domain Names, Defendants listed themselves as the "Admin Contact" and "Tech Contact," reserving themselves complete control over the domains. This scheme allowed Defendants to refuse to transfer the domains to Plaintiffs.

18.     Under the Agreement, Defendants also agreed to act as Plaintiffs' agents to provide Plaintiffs with social media accounts, website design, website support, internet hosting,

and email hosting services in connection with Plaintiffs' Domain Names.

19.    Under the Agreement, Defendants developed social media accounts and websites and provided or facilitated web and email hosting services for Plaintiffs.[1]

20.    Plaintiffs use these websites, email services, and social media accounts for marketing and for all of their internal and external communications, including all of their communications with current and prospective customers, which include requests for services.

21.    In accordance with the Agreement, Plaintiffs paid Defendants in quarterly installments for their services. Plaintiffs have paid all amounts past due under the Agreement, and Plaintiffs have prepaid for Defendants' services through March 31, 2017.

22.    Plaintiffs were free to discontinue use of Defendants' services at any time.

23.    On February 28, 2017, Defendants breached the Agreement by allowing Plaintiff River Services Company, L.L.C.'s domain to expire. As a result, River Services Company, L.L.C.'s website and email services were down from February 28, 2017, until March 2, 2017. Plaintiffs were forced to use a third party to renew the domain name, yet Plaintiffs were still required to get Defendants' approval because Defendants placed Plaintiffs' Domain Names in their exclusive control.

24.    As early as February 6, 2017, Plaintiffs communicated to Defendants that they no longer desired to use Defendants' services and would not be paying for future services beyond the current quarter, which ends March 31, 2017, and which has been paid in full. (Attached as Exhibit 5 is documentation of Plaintiffs' payment for the current quarter).

25.    As early as February 6, 2017, Plaintiffs requested that Defendants provide them with access codes and passwords that are necessary to transition and continue operation of their

---

[1] Defendants obtained email services on behalf of Plaintiffs through Amazon Web Services. Plaintiffs' email accounts use Plaintiffs' Domain Names as email addresses.

websites, social media accounts, and email accounts with Blake Mehaffey at ExPert IT Consultants.

26.     On March 8, 2017, Defendants indicated that they would take the action necessary to transition Plaintiffs' domains, websites, and email services to a new hosting service. Despite Defendants' representations on March 8, 2017, this has not occurred. (Attached as Exhibit 6 are emails showing these communications.)

27.     Defendants have been contacted directly by Plaintiffs and Plaintiffs' new hosting service provider verbally and in writing to effectuate the efficient transition of Plaintiffs' Domain Names, websites, and email accounts. (Attached as Exhibit 7 are emails showing these communications.)

28.     Despite repeated requests, Defendants have refused to provide Plaintiffs with the access codes and passwords required to transition and continue operation of their websites, social media accounts, and email accounts with new service providers. (See Exhibit 7.)

29.     From March 21, 2017, through March 28, 2017, Defendants refused to engage in any communication with Plaintiffs or Plaintiffs' new service provider regarding these access codes and passwords.

30.     On March 29, 2017, Defendants finally communicated to Plaintiffs and stated that they are "discontinuing all services at midnight Central time on March 31, 2017" unless a release is signed requiring Plaintiffs to pay them money that is not owed under the Agreement. (See Exhibit 8) (emphasis added). Plaintiffs River Services Company, L.L.C. and Neptune Diving, L.L.C. have already lost access to a social media account controlled by Defendants. (Attached as Exhibit 9 is an email showing that Plaintiffs were locked out of an account).

31.     Defendants are holding Plaintiffs' Domain Names, websites, social media accounts, and email accounts hostage by conditioning disclosure of the access codes and

passwords — which are required to transition them to the new service providers — on the payment of money which Defendants are not owed. (Attached as Exhibit 8 are emails showing these communications.)

32.     Plaintiffs will suffer irreparable harm if they are unable to take control and exercise their ownership rights in Plaintiffs' Domain Names, websites, social media accounts, and email accounts that were registered, established, developed, and maintained on Plaintiffs' behalves and at Plaintiffs' direction.

33.     If Defendants execute their plan of "discontinuing all services" before Plaintiffs are provided access codes and passwords and the time necessary to transfer services, Plaintiffs will lose their ability to communicate with current and prospective customers via email, thereby damaging these relationships. Furthermore, Plaintiffs will lose their domain names, websites, and social media accounts, which are uniquely associated with Plaintiffs' names, marks, and brands, and which are critical components of Plaintiffs' businesses. These losses will result in untold financial damages, as well as a loss of Plaintiffs' reputations and good will, and a loss of unknown business opportunities. Furthermore, use of Plaintiffs' Domain Names by a third party will confuse current and future customers.

34.     For these reasons, Plaintiffs' face irreparable harm that includes immeasurable financial loss and requires immediate judicial intervention.

## Count I – Anticybersquatting Consumer Protection Act
### (15 U.S.C. §1125(d))

35.     Plaintiffs reassert and reallege the allegations set forth in Paragraphs 1–34 of their Complaint as though fully set forth herein.

36.     Defendants registered and have a bad faith intent to profit from Plaintiffs' Domain Names, which are identical or confusingly similar to the distinctive names, corporate identities, and intellectual property of each Plaintiff, respectively.

37.     Defendants have acted knowingly, willfully, maliciously, and in bad faith by refusing to cede control over the selected domain names to Plaintiffs unless Plaintiffs pay them money that they are not owed.

38.     Defendants therefore seek to profit from their registration of Plaintiffs' Domain Names, which are clearly identified and associated with Plaintiffs' distinct brands and intellectual property, and which Defendants registered at the direction of and on behalf of Plaintiffs.

39.     As a result of Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116(a) and to recovery of all damages that they have suffered, and will continue to suffer, including statutory damages and attorney's fees, in an amount to be determined at trial.

### Count II - Louisiana Unfair Trade Practices Act
### (La. Rev. Stat. § 51:1401, et seq.)

40.     Plaintiffs reassert and reallege the allegations set forth in Paragraphs 1–34 of their Complaint as though fully set forth herein.

41.     Defendants have, without lawful authority, blocked Plaintiffs from controlling domain names, websites, and email accounts that are owned by Plaintiffs.

42.     Through egregious behavior, including deception, extortion, fraud, and other unethical acts, Defendants have misappropriated Plaintiffs' ownership interests in their websites, domain names, and email accounts to unfairly damage Plaintiffs' business operations.

43.     As a result of Defendants' unfair and deceptive acts, Plaintiffs have suffered, and will continue to suffer, actual damages.

### Count III – Breach of Fiduciary Duty

44.     Plaintiffs reassert and reallege the allegations set forth in Paragraphs 1–34  of their Complaint as though fully set forth herein.

45.     Plaintiffs relied upon Defendants' skill and expertise to act on their behalves to register Plaintiffs' Domain Names, develop websites for these domains, and establish their internet hosting and email hosting services.

46.     Defendants have not acted diligently, prudently, and in Plaintiffs' best interests in performing these duties to the detriment of Plaintiffs.

47.     Defendants have acted beyond the authority given to them to the detriment of Plaintiffs.

48.     In an attempt to retain ownership and control over the Plaintiff's Domain Names, websites, and email accounts for themselves, Defendants have acted to the detriment of Plaintiffs by withholding the access codes and passwords from Plaintiffs.

49.     As a result of Defendants' wrongful conduct, Plaintiffs have suffered, and will continue to suffer, actual damages.

### Count IV - Breach of Contract

50.     Plaintiffs reassert and reallege the allegations set forth in Paragraphs 1–34 of their Complaint as though fully set forth herein.

51.     Pursuant to the Agreement, Plaintiffs retained full ownership over the selected domain names, their websites, and their email accounts.

52.     Plaintiffs have performed their obligations under the Agreement by paying Defendants the full amount that they are owed.

53.     Defendants breached the Agreement by allowing Plaintiff River Services Company, L.L.C.'s domain name to lapse, which left its website and email services down. Plaintiffs incurred damages to fix this problem.

54.     Defendants have breached the Agreement by refusing to provide access and control of Plaintiff's Domain Names, as well as associated websites and email accounts, after

multiple requests, in a timely and reasonable manner.

55.     Defendants have also breached the Agreement by failing to timely provide transition services during the pre-paid term of the Agreement, through March 31, 2017, in a reasonable manner and as contemplated under the Agreement.

56.     As a direct and proximate result of Defendants' breach of the Agreement, Plaintiffs have suffered damages, will continue to suffer damages, and will be irreparably harmed.

57.     The damage that will be suffered by Plaintiffs is immeasurable because it cannot be determined to what extent relations with customers, referral sources, as well as the good will of Plaintiffs, have been and will be damaged, and Plaintiffs are subject to market share loss as a result of this inevitable breach and the consequences of hosting services being shut down on midnight March 31, 2017.

## Count V – Detrimental Reliance

58.     Plaintiffs reassert and reallege the allegations set forth in Paragraphs 1–34  of their Complaint as though fully set forth herein.

59.     Plaintiffs reasonably relied upon Defendants' representations that they were acting in good faith on behalf of Plaintiffs to register Plaintiff's Domain Names, develop websites for these domains, and establish website and email hosting services.

60.     Plaintiffs reasonably relied upon Defendants' representations that Plaintiffs would retain ownership and control over Plaintiff's Domain Names, websites, and email accounts that were registered and developed on their behalf.

61.     Through Defendants' acts and omissions, Plaintiffs have been unable to exercise their rights and interests in their domain names, websites, and email accounts.

62.     Plaintiffs have suffered and will continue to suffer damages as a result of their

justifiable reliance on Defendants' representations.

## Count VI - Temporary and Permanent Injunctive Relief

63.     Plaintiffs reassert and reallege the allegations set forth in Paragraphs 1–34 of their Complaint as though fully set forth herein.

64.     Plaintiffs will suffer irreparable injury if Defendants are not enjoined from: (i) deregistering, destroying, modifying, or terminating Plaintiffs' Domain Names, websites, and website and email hosting services; and (ii) rejecting Plaintiffs' repeated requests for the access codes and passwords necessary to continue operation of their websites and email accounts and which are necessary to transition services to new service providers without interruption to Plaintiffs' businesses.

65.     By reason of past and continuing breaches of the Agreement by Defendants, Plaintiffs have and will continue to suffer irreparable harm for which there is no adequate remedy at law.

66.     If Defendants are permitted to continue breaching the Agreement, Plaintiffs will suffer immediate and irreparable harm and injury, including, but not limited to, immediately and irreparably disrupting and damaging their business operations, industry good will and reputation, and customer relationships.

67.     Money damages will be inadequate to fully compensate Plaintiffs for the incalculable loss of their competitive edge, good will and reputation, and an amount of future profits that is impossible to determine, all of which would result from Defendants' continued wrongful acts and omissions.

68.     Plaintiffs are therefore entitled to a temporary and permanent injunction  under 15 U.S.C. § 1116(a) to prohibit Defendants' unlawful conduct and avoid the immeasurable damage that will result if their domains are deregistered, or if their websites and emails services are

modified or terminated.

69.     Plaintiffs have a clear legal right to prevent Defendants from continuing their improper and unlawful activities and to prevent Defendants from deregistering, transferring, changing, or terminating their domains, websites, social media accounts, and/or web and email hosting services.

70.     Plaintiffs have a substantial likelihood of success on the merits, and the entry of an injunction will not be contrary to the public health, safety and welfare.

71.     When balancing the irreparable harm to Plaintiffs, the Defendants, and the community, the harm will be significant if Plaintiffs are unable to immediately enforce the contractual obligations detailed herein and exercise their legal rights in their domain names, websites, social media, and email accounts, whereas Defendants will not suffer any damages if the status quo is maintained and they ultimately prevail.

72.     Plaintiffs have a legitimate business interest in enforcing the Agreement and exercising their rights to their domain names, websites, social media, and email accounts, and Plaintiffs request for injunctive relief is reasonable in time and scope.

73.     Based on the foregoing, a Temporary and Permanent Injunction should be issued enjoining Defendants as set forth below and in Plaintiffs' memorandum in support of their request for a temporary restraining order and preliminary injunction.

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court enter an Order providing the following relief:

a.     Enjoining Defendants from causing any change to Plaintiffs' domain registration, website, or email accounts, except by written request from an agent of Plaintiffs until a complete transfer of hosting services and accounts to Plaintiffs' new service provider can be completed;

b.     Ordering Defendants to immediately provide Plaintiffs with the access codes and passwords required to transition the domain names (1) riverservicescompany.com; (2) budwineassociates.com; (3) neptunedivingllc.com; and (4) naturesescapespa.com as well as associated email and website services to Plaintiffs' new service providers;

c.     Award Plaintiffs all compensatory damages, punitive damages, statutory damages, costs, and attorney's fees for this action; and

d.     Such other and further relief as the Court deems just and proper.


Dated: March 30, 2017

Respectfully submitted,




By: /s/ Thomas P. Hubert
    Thomas Hubert (La Bar. #19625)
    P.J. Kee (La. Bar #34860)
    Michael Foley (La. Bar # 35774)
    Micah Fincher (La. Bar # 33830)
    Jones Walker LLP
    201 St. Charles Ave, Ste 5100
    New Orleans, LA 70170
    Phone: (504) 582-8230
    Fax: (504) 589-8230
    thubert@joneswalker.com
    pkee@joneswalker.com
    mfoley@joneswalker.com
    mfincher@joneswalker.com

    Counsel for River Services Company, L.L.C., Budwine & Associates, L.L.C., Neptune Diving, L.L.C., and Nature's Escape, L.L.C.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| River Services Company, L.L.C., Budwine & Associates, L.L.C., Neptune Diving, L.L.C., and Nature's Escape, L.L.C. | : : : : | CIV NO. _____ |
| | : | JUDGE _____ |
| Plaintiffs, | : : | MAGISTRATE _____ |
| VERSUS | : : | SECTION _____ |
| | : | |
| Stephen Peer, Individually, and Peer Partners Interactive, L.L.C. | : : | |
| Defendants. | | |

---

**VERIFICATION**

---

I, Randy Bullard, swear under penalty of perjury that I am the President of River Services Company, L.L.C. and Neptune Diving, L.L.C., a corporate officer of Budwine & Associates, L.L.C., and an investor in Nature's Escape, L.L.C., that I have read the allegations in the Complaint for Injunctive Relief and Damages, that all the allegations are true and correct to the best of my knowledge, information, and belief. I further certify that a true and correct copy of payment made under the Agreement through March 31, 2017, with a post date of January 9, 2017, is attached to the Complaint as Exhibit 5. I further certify that a true and correct copy of correspondence requesting access codes and passwords from Defendants, beginning on March 8, 2017, and ending on March 29, 2017, is attached to the Complaint as Exhibits 6 through 7. I further certify that a true and correct copy of correspondence showing that Defendants plan to terminate all of the services it provides to Plaintiff without providing information necessary to transfer these services is attached to the Complaint as Exhibits 8 through 9.

*R C Bullard Jr*
_____
Randy Bullard